

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS

Gerald C. Mann

~~ATTORNEY GENERAL~~

ATTORNEY GENERAL

Honorable D. C. Greer          Opinion No. O-3043
State Highway Engineer         Re:  Construction of the Cer-
Austin, Texas                       tificate of Title Act

Dear Sir:

        You have requested the opinion of this department
in answer to eight questions concerning the proper construc-
tion to be placed on the Certificate of Title Act, Article
1436-1, Vernon's Annotated Penal Code of Texas. The ques-
tions will be answered in the order that you presented them.

        "1.  Since October 1, 1939 it has been the
        policy of the Certificate of Title Division to
        allow joint lien holders to appear on the title.
        For example, the lien holders have been shown as
        'John Jones Motor Company and/or Packard Finance
        Company.' We have allowed either lien holder to
        release the lien, and in cases of repossession
        we have allowed either to sign and file repos-
        session affidavit without the joinder of the oth-
        er.

        "Question:  Where the lien holders appear
        on the title as shown above, under the terms of
        the Certificate of Title Act, may we accept a re-
        lease or repossession affidavit from either lien
        holder or should we request both lien holders to
        execute the release of lien and repossession af-
        fidavit."

        Section 47 of the Certificate of Title Act reads
as follows:

        "When a lien is discharged, the holder there-
        of shall, on demand of the owner, execute and
        acknowledge before a Notary Public the discharge
        of the lien upon such form as may be prescribed
        by the Department, and upon presentation of such
        evidence, the owner may present the certificate
        of title to the designated agent in the county
        together with application for title as prescrib-
        ed in this Act and shall receive from the Depart-
        ment a new title."

It is obvious from Section 47, supra, that the holder of the lien must execute a release or discharge of the same. It follows of necessity that where the holder is two individuals or two companies that it would be necessary for a proper release to be signed that both of said individuals execute the instrument. Otherwise, the instrument would not have been executed by the complete holder of the lien.

In the case of repossession we call your attention to the portion of Section 35 of the Act which reads as follows:

". . . except however, that where foreclosure is had under the terms of a lien, the affidavit of the person, firm, association, or corporation or authorized agent, of the fact of repossession and divestiture of title in accordance with the terms of the lien, shall be sufficient to authorize the issuance of a new certificate of title in the name of the purchaser at such sale . . ."

Under the language of the above quoted Section either the person or authorized agent making the foreclosure under the terms of the lien is authorized to sign the affidavit. You are advised that in the situation you present the repossession must take place in strict accordance with the terms of the lien. Therefore, where the mortgage provides that one of the joint lien holders may foreclose the same and sell the same at a private sale an affidavit made by such individual or his agent to the effect that this was done in accordance with the terms of the lien would be sufficient to vest good title in the purchaser at such foreclosure sale.

"2. Under the terms of House Bill No. 205 only the first lien holder may apply for and receive a certified copy of the original title when the original title has been lost or destroyed.

"Question: With lien holders appearing on title as 'and/or' as above, when application is made for certified copy of original title may either apply for a certified copy or should both lien holders sign the application? Our experience in some cases has been that the original title is in the possession of the finance company and the motor company will apply for certified copy of the original title."

We call your attention to Section 33 of the Act which reads in part as follows:

"Should a certificate of title, 'Duplicate Original' or 'Original,' be lost or destroyed, the owner or lien holder thereof may procure a certified copy of same directly from the Department by making affidavit upon such forms as may be prescribed by the Department from time to time, accompanied by a fee of Twenty-five (25) Cents, which shall be deposited in The State Highway Fund and be expended as provided by Section 57 of this Act, provided however, that the certified copy of the certificate of title marked 'Original' shall issue only to the first lien holder where a lien is disclosed thereon . . . ."

You are advised that the only time the Department is authorized to issue a certified copy of the original title would be in the situation where the first lien holder made an affidavit stating that the first original had been lost or destroyed. In order for such an affidavit to be sufficient in the case where there were joint lien holders it would be necessary that both lien holders sign the affidavit that the original which was issued by the Department had been lost or destroyed. We are unable to find any provision in the law which authorizes the Department to issue two original certificates of title to two joint lien holders unless one of them is issued in lieu of the first one which has been either lost or destroyed.

"3. Title has been issued and no liens are recorded on the title. Repossession is attempted by a lien holder not on record from some person other than the person to whom the latest title was issued.

"Question: What evidence, if any, should be presented to this Department to enable us to issue title to the repossessor?"

Under the facts you present repossession is attempted against an individual who has created a lien against a motor vehicle which individual is not the holder of the title to the motor vehicle as shown by the Certificate of Title Department's records. Apparently, in your question the individual who created the lien purchased the motor vehicle from the record title holder without having a certificate of title issued in his name. Assuming those facts to be true, we call your attention to the following Sections of the Certificate of Title Act:

"Sec. 51. It shall hereafter be unlawful for any person, either by himself or through any agent, to offer for sale or to sell or to offer as security for any obligation any motor vehicle registered or licensed in this State without then and there having in his possession the proper receipt or certificate of title covering the motor vehicle so offered.

"Sec. 52. It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the purchase, be transferred upon such form as may be provided by the Department.

"Sec. 53. All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with."

In the case of Elder Chevrolet Co. v. Bailey County Motor Co., 151 S. W. (2d) 938, the court discussed this proposition and stated as follows:

"The weight of authority in other states having laws basically the same as our Certificate of Title Act, is that a sale not conforming to the law is void and does not pass title. 37 A.L.R. 1465; Morris v. Firemen's Ins. Co., 121 an. 482, 247 P. 852, 52 A.L.R. 701; Commercial Credit Co. v. Schreyer, 120 Ohio St. 568, 166 N. E. 808, 63 A.L.R. 668; Rankin v. Wyatt, Mo. Sup., 73 S.W. 2d 764, 94 A.L.R. 948; Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 7, §§ 4261, 4262.

"We think it probable that Section 53 of the Act in question was passed with the intent on the part of the Legislature to modify the law as declared by the Supreme Court originally in Hennessy v. Automobile Ins. Ass'n., supra. It cannot be validly asserted this was beyond its power. The decision in question makes no such holding. By such a provision freedom of contract is not impaired--it merely regulates the mode of manifestation of the intention of the parties. To hold that title did pass would be in the face of a statutory provision that is too plain to require construction. . . ."

Under the facts you present the record title holder of the motor vehicle is still the party in whose name the original certificate of title was issued. Therefore a repossession attempted by virtue of a lien created by someone else other than the record holder would be ineffectual as far as your Department is concerned. Any question of estoppel which might be asserted in favor of the lien holder against the record title holder would have to be adjudicated in the court of law and could not be determined by your Department. In order for you to be able to issue a certificate of title under the facts you present to the purchaser at the foreclosure sale it will be necessary for there first to be a certificate of title issued showing a sale from the original record title holder to the individual who had created the lien, which certificate of title would have noted on it the lien that was subsequently foreclosed.

"4. Title has been issued to John Doe showing the A B C Finance Company as the lien holder of Record. Repossession is attempted by X Y Z Motor Company.

"Question: What evidence must be presented by the X Y Z Motor Company to enable this Department to issue to them."

In your fourth question apparently the A B C Finance Company, the record lien holder has assigned its lien to the X Y Z Motor Company. In 9 Texas Jurisprudence, 140, the applicable rule of law is stated as follows:

"Choses in action being assignable, it follows that a debt whether evidenced by written instrument or resting in parol, and whether secured or unsecured, may be assigned by its owner. Since the mortgage lien is but an incident to the debt, ordinarily it follows the debt, and it may therefore be said generally that the mortgage may be assigned to another. Upon an assignment, of course, the mortgagee no longer has any right or interest in the debt assigned or the property securing it, and the assignee succeeds to all his former rights. . . ."

If X Y Z Motor Company presents evidence to your Department of a proper assignment of the lien shown in the name of the A B C Finance Company you are advised that the X Y Z Motor Company stands in the shoes of the A B C Finance Company and has succeeded to all of such company's rights in said lien including the right of repossession.

Memorable D. C. Greer, page 6

"5.  Title has been issued to John Jones on
which there are no liens recorded.  Jones later
mortgages his automobile and fails to apply for
corrected title recording the lien.

"Question:  Can Mortgagee repossess the car
by filing application for title in his, the mort-
gagee's, name supporting such application with a
copy of the chattel mortgage on Jones' car and a
repossession affidavit?"

In this question you ask if the mortgagee may repossess
the car and take out a certificate of title in his own name.  Ap-
parently the question you are concerned with is the right of a
mortgagee to repossess a motor vehicle under the terms of a mort-
gage in an instance where such lien has not been noted on the certi-
ficate of title.  If such repossession is permissible, of course
the mortgagee would not get a certificate of title in his own name
but the certificate of title would be gotten in the name of the
purchaser from the mortgagee at the foreclosure sale.  We have
examined the Certificate of Title Act very closely and are unable
to find anything in said Act which would invalidate a lien as be-
tween the parties where said lien was not noted on the certificate
of title.  We call your attention to the following Sections of
the Certificate of Title Act:

"Sec. 42.  No lien on any motor vehicle shall
be valid as against third parties without actual
knowledge thereof or enforceable against the motor
vehicle of any such third parties as the issuance
of a certificate of title thereof, unless an appli-
cation for a new title is made as prescribed in
this Act and all first and subsequent liens noted
by the Department thereon."

"Sec. 44.  No lien on any motor vehicle to
which a receipt or certificate of title has been
issued shall be valid as against third parties with-
out actual knowledge thereof, or enforceable against
the motor vehicle of any such third parties, unless
the notation of said lien shall have been caused to
be made on receipts and certificates of title on
said motor vehicle, as provided in this Act."

"Sec. 46.  Only liens noted on a receipt or
certificate of title shall be valid as against cred-
itors of the mortgagor in so far as concerns the
motor vehicle."

The above quoted Sections deal with the validity of liens on motor vehicles which are not recorded but make the same invalid as to third parties without actual notice and as to creditors of the mortgagor. While the Certificate of Title Act, as shown previously, does make a sale without the transfer of the certificate of title void, the same nowhere makes a lien invalid which is not noted on the certificate of title insofar as the parties to the mortgage themselves are concerned. Section 52 of the Act reads as follows:

"It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the purchase, be transferred upon such form as may be provided by the Department." (Underscoring ours)

The above quoted section makes it unlawful to buy or acquire a title without complying with the Certificate of Title Act, but it specifically exempts the obtaining of a lien from the operation of said section.

It is the opinion of this Department that under the facts you present the mortgagee by a strict compliance with the terms of the mortgage itself may repossess a motor vehicle on which a certificate of title has been issued even though the lien being foreclosed against the motor vehicle has not been noted on the certificate of title. In answering your question we are not passing upon the status of any intervening rights of third parties in the motor vehicle.

"6. A motor vehicle is sold at Sheriff's Sale.

"Question: What evidence is needed to issue a title to the purchaser besides Sheriff's bill of sale? This question is applicable (1.) to motor vehicles of which no titles have been issued; (2.) to motor vehicles on which titles have been issued and no liens recorded; and (3.) to motor vehicles on which titles have been issued and a lien recorded."

While your question is a general one we assume you are referring to a situation where a lien against a motor vehicle has been foreclosed by judicial process and the court has ordered the sheriff to sell the motor vehicle in satisfaction of its judgment. Section 35 of the Certificate of Title Act provides that the Department may issue a certificate of title to the purchaser at a sheriff's sale on being presented with a certified copy of the order of sale showing the officer's return thereon or the original or certified copy of the bill of sale from the officer making the judicial sale. Where the judicial sale is made pursuant to an order of a court of law it is our opinion that your Department must abide by the judgment of the court and presume that all the rights have been adjudicated in the court proceedings. The court having authorized the judicial sale, therefore, under Section 35, supra, it is the duty of your Department to issue a certificate of title to the purchaser at the sheriff's sale made pursuant to the court order.

"7. Numerous new motor vehicles are being brought into Texas from other States for the purpose of resale within the State of Texas. Some of these motor vehicles are brought in by motor companies and some by individuals.

"Question: Should a Manufacturer's Certificate be demanded by this Department when such new car is the subject of a first sale (to retail purchaser) in this State even though the State from which the car is brought does not have a Certificate of Title law and does not require Manufacturers Certificates in that State. If a Manufacturer's Certificate is not needed what evidence must be presented to enable this Department to issue title to the retail purchaser."

We believe that your seventh question is answered by Section 28 of the Certificate of Title Act, which reads as follows:

"No designated agent shall issue a receipt for an application for certificate of title to any new motor vehicle the subject matter of the first sale unless the applicant shall deliver to such agent a manufacturer's certificate properly assigned by the manufacturer, distributor, or dealer shown thereon to be the last transferee to the applicant, upon form to be prescribed by the Department."

The above quoted section makes no distinction between a situation where a new motor vehicle is brought into this State from another State which does not have a Certificate of Title Law and a case where the same is brought into this State from a State having such a law. Section 22 is specific in requiring that a manufacturer's certificate be delivered in each instance where an application is made for a certificate of title on a new car which is the subject of a first sale in the State. Only by a strict compliance with this Section can we have a full and complete set of titles on the motor vehicles which are actually operating on the highways of this State and licensed in this State. In our opinion, under the facts you present, it is necessary that a manufacturer's certificate be presented to the county tax collector when application is made for a certificate of title on a new motor vehicle.

"8. Husband or wife is declared insane. Remaining spouse desires title in his or her name. The automobile is considered community property.

"Question: What evidence should be presented to allow this Department to issue title to the remaining spouse when the other one is declared insane and has been committed to the Insane Asylum? This question also applies in cases where title has been issued; and where title has not been issued and the remaining spouse desires to sell the motor vehicle claiming such motor vehicle to be community property. Discuss also the interest of heirs in community automobiles in such cases."

Article 3662 of the Revised Civil Statutes reads as follows:

"Where the husband or wife dies intestate, or becomes insane, having no child or children, and no separate property, the common property passes to the survivor, charged with the debts of the community; and no administration thereon or guardianship of the estate shall be necessary."

You are advised, therefore, that under the facts you present the surviving spouse would take title to the automobile in question, providing that there were no children. See Howell v. Fidelity Lumber Co., 228 S. W., 181, by the Commission of Appeals. In such event, if the surviving spouse presented an affidavit to your department to the effect that the automobile in question was community property and that there were no children, under the facts

you present you would be authorized to issue a certificate of title in the name of the surviving spouse or in the name of the purchaser from him or her.

However if at the time that one of the spouses is legally declared to be insane there are children, a different rule would apply. The rights of the community survivor are determined by Articles 3663 through 3680 of the Revised Civil Statutes. In referring to such statutes the Supreme Court of Texas in Fidelity Union Ins. Co. v. Hutchins, 133 S. W. (2d) 105, stated as follows:

"We think that it goes without saying that the rights, powers, and liabilities of the qualified community survivor are fixed and determined by pertinent statutes. Without qualifying under any statute the surviving spouse may sell the community property to pay community debts."

You are advised therefore that if the surviving spouse makes an affidavit under the facts you present that the motor vehicle is being sold to pay community debts you would be authorized to issue the certificate of title even though there were children. If the sale of the motor vehicle by the surviving spouse is not being made to pay a community debt and there are children it will be necessary for your department to be furnished evidence that the surviving spouse has qualified as community survivor and has posted the proper bond that is provided for in Article 3667 and Article 3678 of the Revised Civil Statutes. When this is done you would be authorized to issue a certificate of title to the purchaser of the surviving spouse and title to the motor vehicle would pass even though the funds derived from the sale were dissipated by the community survivor. In such event the children could look to the bond of the community survivor and not to the purchaser of the automobile. See Fidelity Union Ins. Co. v. Hutchins, supra, and McFarland v. Beaton, 126 S. W. 719, affirmed in 134 S. W. (2d) 1086.

The above rules are general ones which might in some instances be altered by the special facts of a particular case. In such event it would be necessary for us to pass on the question under the particular facts presented.

We trust that the foregoing will be sufficient to advise you in the matters you presented.

APPROVED JAN 15, 1942
/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL
BG:db:wb

Yours very truly
ATTORNEY GENERAL OF TEXAS
by /s/ Billy Goldberg
Billy Goldberg, Assistant

APPROVED: OPINION COMMITTEE
By: BWB Chairman